IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROLEX WATCH U.S.A., INC.,

    Plaintiff,

3:12-CV-736-PK

OPINION AND
v.    ORDER

LELAND STANFORD HOFFMAN, JR.,

    Defendant.

PAPAK, Magistrate Judge:

    Plaintiff Rolex Watch U.S.A., Inc. ("Rolex") filed this action against defendant Leland Stanford Hoffman, Jr. (doing business as Antique Time, www.rolexcrown.com, and www.horologist.com), on April 25, 2012, alleging Hoffman's liability for trademark infringement in violation of 15 U.S.C. § 1114, cybersquatting in violation of 15 U.S.C. § 1125(d)(1)(A), and unfair competition in violation of 15 U.S.C. § 1125(a), and seeking money damages, an accounting, injunctive relief to enjoin Hoffman from engaging in any further allegedly infringing conduct, and award of its attorney fees and costs. On November 15, 2012, the parties advised the court that they had settled their dispute in principle. Although Hoffman subsequently took the

Page 1 - OPINION AND ORDER

position that his expressed consent to the parties' settlement agreement was not enforceable, on January 24, 2013, I ruled that the parties' settlement agreement was complete, binding, and enforceable.

Now before the court is Rolex's motion (#61), styled as a motion for imposition of sanctions against Hoffman for his failure to comply with his obligations under the parties' settlement agreement, but argued as a motion for award of attorney fees pursuant to the parties' settlement agreement and, in the alternative, for imposition of the attorney-fee sanction. I have considered the motion and all of the pleadings and papers on file. For the reasons set forth below, Rolex's motion is granted as discussed below.

## LEGAL STANDARDS

### I. Motion for Award of Attorney Fees Pursuant to Contract

Under Oregon law:

> In any action or suit in which a claim is made based on a contract that specifically provides that attorney fees and costs incurred to enforce the provisions of the contract shall be awarded to one of the parties, the party that prevails on the claim shall be entitled to reasonable attorney fees in addition to costs and disbursements, without regard to whether the prevailing party is the party specified in the contract and without regard to whether the prevailing party is a party to the contract.

Or. Rev. Stat. 20.096(1). "[A]ward [of fees pursuant to Section 20.096(1)] is mandatory; the trial court has no discretion to deny it, although it does have discretion as to what amount is 'reasonable.'" *Benchmark Northwest, Inc. v. Sambhi*, 191 Or. App. 520, 523 (2004), *quoting U.S. Natural Resources, Inc. v. Gray*, 66 Or. App. 769, 773 (1984). Moreover, the court has an independent duty to review a party's fee petition for reasonableness. *See Gates v. Deukmejian*, 987 F.2d 1392, 1401 (9th Cir. 1993).

Page 2 - OPINION AND ORDER

For purposes of determining the reasonableness of a fee petition made pursuant to Section 20.096(1), the court should consider "not only . . . the amount of time required, but also such additional factors as the novelty and difficulty of the question involved, the amount involved and the result obtained, among other factors. *Chalmers v. Oregon Auto. Ins. Co.*, 263 Or. 449, 455-456 (1972).

## II. Motion for Imposition of the Attorney-Fee Sanction

District courts have the inherent power to issue sanctions against a party or lawyer for a "full range of litigation abuses." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991). "Such "inherent power . . . can be invoked even if procedural rules exist which sanction the same conduct." *Id.* at 49. The court's inherent power to sanction includes the power to tax a party with an opposing party's attorney fees "as a sanction for the [party's] 'willful disobedience of a court order,' *id.* at 45, *quoting Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258 (1975), *quoting Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718 (1967), or when the party acts in the course of litigation "in bad faith, vexatiously, wantonly, or for oppressive reasons," *id.* at 45-46, *quoting Alyeska*, 421 U.S. at 258-259, *quoting F. D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 129 (1974). *See also, e.g., Fink v. Gomez*, 239 F.3d 989, 991-993 (9th Cir. 2001).

Where a court taxes a party with an opposing party's attorney fees pursuant to the court's inherent power to sanction, "there is nothing to suggest that [the] sanctions award [must] directly correlate with the additional time" incurred by the opposing party in consequence of the conduct warranting imposition of sanctions. *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012). To the contrary, "[t]he district court has wide discretion in crafting a sanctions

Page 3 - OPINION AND ORDER

award and" award of attorney fees as a sanction in an amount that differs from the opposing party's actually incurred fees is "not an abuse of discretion." *Id.*

## MATERIAL FACTS

Following settlement negotiations, on November 15, 2012, counsel for Rolex requested via email that counsel for Hoffman provide "confirmation" that specific settlement terms set forth in seven enumerated paragraphs were "acceptable" to his client. That same day, counsel for Hoffman responded via email that "We have a deal," advising that Hoffman would begin compliance with his obligations as set forth in the seven enumerated paragraphs. The following day, November 16, 2012, counsel for Rolex forwarded to counsel for Hoffman a draft written settlement agreement incorporating all seven of the enumerated paragraphs setting forth the terms the parties had agreed to, as well as additional provisions that the parties had not yet negotiated. The thirteenth paragraph of the written settlement agreement, which the parties had not previously negotiated, read as follows:

> The parties agree that the confidentiality of this agreement is a material consideration for their entering into this agreement. Accordingly, neither of the parties, nor any of their respective directors, officers, agents, employees, affiliates, assigns, insurers, successors, attorneys, or other representatives, shall disclose any terms or contents of this agreement, or disparage the other party.

Five days later, on November 21, 2012, counsel for Hoffman advised counsel for Rolex via email that his client had "one requested change in the settlement agreement," such modification to be made to one of the negotiated terms of the agreement not at issue here. The parties negotiated the detail of Hoffman's requested change, and on November 30, 2012, counsel for Hoffman advised counsel for Rolex that a formulation of the requested modification proposed by counsel for Rolex was acceptable to Hoffman. Counsel requested that Rolex provide a copy

Page 4 - OPINION AND ORDER

of the "final settlement agreement" incorporating the negotiated modification for his client's signature.

Over the following weeks, counsel for Hoffman repeatedly advised counsel for Rolex that Hoffman intended to sign the agreement in the form provided by Rolex on November 30, 2012. Specifically, counsel advised on December 6, 2012, that Hoffman "intends on signing the agreement," on December 7, 2012, that Hoffman indicated to him that he would sign the agreement the following week, on December 14, 2012, that his client was undertaking to satisfy his obligations under the negotiated terms of the agreement, and on December 21, 2012, that Hoffman "still indicates his intention to sign the agreement." Ultimately, however, Hoffman elected to attempt to repudiate the agreement, taking the position that the unnegotiated mutual confidentiality provision set forth at paragraph 13 of the unexecuted settlement agreement was unacceptable to him. Hoffman expressed himself willing to sign the agreement absent that provision.

On January 24, 2013, I issued an Opinion and Order (#52) by and through which I found the party's settlement agreement to be complete, binding, and enforceable, and specifically ordering Hoffman to comply with its terms. It is undisputed that the parties' settlement agreement required Hoffman to transfer to Rolex all internet domain names registered to him that included the name "rolex" or other names trademarked by Rolex, to delete from all twitter accounts and websites controlled by him any statements regarding Rolex's and/or its attorneys' business practices, reputations, or personal appearances, to stop advertising a toll-free telephone number addressed to him using the name "ROLEX" and to remove references to the telephone number using that name from twitter accounts and websites controlled by him, to remove from

Page 5 - OPINION AND ORDER

all twitter accounts, websites, and social media accounts controlled by him all photographs of Rolex's products not created by Hoffman and all banners displaying trademarks registered to Rolex, to stop using the terms "exclusive" or "professional" in connection with efforts to market Rolex repair services, and to place a prominent disclaimer at the top of each website page controlled by him on which Rolex product images or references are displayed. It is further undisputed that the parties' settlement agreement provided that in the event "any legal action, proceeding or arbitration [wa]s initiated to enforce or interpret" its provisions, Rolex would be "entitled to recover any and all . . . fees and costs incurred" in consequence of Hoffman's conduct in violation of the agreement.

On January 25, 2013, counsel for Rolex sent Hoffman's then-counsel of record an email message reiterating Hoffman's obligations under the parties' settlement agreement. Having received no response thereto, counsel for Rolex followed up with a similar such email message on January 30, 2013. That same day, Hoffman's counsel responded via email as follows:

> What changes are you indicating that my client has not made? My client represents that he has made all of the requested changes.

Also on January 30, 2013, counsel for Rolex sent counsel for Hoffman a detailed email message setting forth with particularity all of the actions Hoffman was required to take under the parties' settlement agreement that he had not yet taken. These included Hoffman's failure to transfer to Rolex the domain name http://rolexcrown.wordpress.com that had been registered to Hoffman, approximately thirty specifically identified website pages and tweets controlled by Hoffman on which statements regarding Rolex's and/or its attorneys' business practices, reputations, or personal appearances were displayed, approximately three website pages

Page 6 - OPINION AND ORDER

controlled by Hoffman on which the name "ROLEX" was used in connection with a telephone number registered to Hoffman, approximately two website pages controlled by Hoffman on which photographs of Rolex products were displayed, approximately eleven website pages on whioch Hoffman advertised his Rolex repair services using the term "professional," and Hoffman's failure to place the required disclaimer at the top of pages referencing Rolex's trademarks.

Counsel for Hoffman not having responded to Rolex's message, and Hoffman having failed to correct any of the identified deficiencies in his compliance with the parties' agreement, counsel for Rolex requested this court's intervention, by letter. On February 1, 2013, counsel for Hoffman responded with a letter to the court indicating that Hoffman was in full compliance with his obligations under the agreement.

On February 13, 2013, the parties and the court participated in a telephone conference to discuss the parties' dispute. Once it became apparent that Hoffman was not, in fact, in compliance with his obligations, the court removed itself from the discussion, and permitted the parties to continue their discussions in the court's absence. Over the course of the teleconference, counsel for Rolex identified with particularity each and every instance of Hoffman's failure to comply with his clear obligations under the agreement. Notwithstanding these efforts, Hoffman having continued his failure to comply with his obligations, on February 15, 2013, counsel for Rolex requested further court intervention to enforce the agreement. Rolex's letter request for further court intervention was supported by documents identifying with particularity all of the instances of Hoffman's continued noncompliance with his obligations. These included all deficiencies previously identified in Rolex's detailed email message of January 30, 2013.

On March 8, 2013, the parties appeared in open court to discuss Hoffman's noncompliance with his obligations under the settlement agreement. At that time, Hoffman had corrected none of the deficiencies identified to him with particularity on January 30, 2013, and again on February 15, 2013. During the course of that hearing, Hoffman was able to connect to his websites, twitter accounts, and social media accounts, and to make changes so as to bring himself into partial compliance with his obligations. Over the course of the next three days, in response to repeated prompting via email by counsel for Rolex, Hoffman corrected all remaining noncompliant website pages, tweets, and social media accounts. Hoffman's compliance with the obligation to transfer the http://rolexcrown.wordpress.com domain was by that time impossible, because Hoffman had canceled the domain name rather than transfer it to Rolex, and no longer had authority to effect the transfer.

This motion followed on March 18, 2013.

## ANALYSIS

As noted above, Rolex both asserts a contractual right to award of its attorney fees reasonably incurred in connection with obtaining Hoffman's compliance with his obligations under the parties' settlement agreement and, in the alternative, seeks imposition of the attorney-fee sanction on the basis of Hoffman's dilatory compliance with those obligations. I address both of Rolex's fee-shifting theories in turn, below.

### I.   Attorney Fees as Contractual Entitlement

#### A.   Rolex's Contractual Entitlement to Award of Fees

As noted above, the parties' settlement agreement provides that in the event "any legal action, proceeding or arbitration is initiated to enforce or interpret" its provisions, Rolex is

"entitled to recover any and all . . . fees and costs incurred" in consequence of Hoffman's conduct in violation of the agreement. Such provisions are clearly enforceable under Oregon law. *See* Or. Rev. Stat. 20.096(1); *see also, e.g., Wilkes v. Zurlinden*, 328 Or. 626, 631-634 (1999); *Benchmark Northwest*, 191 Or. App. at 523.

I agree with Rolex that Hoffman failed to comply with the terms and provisions of the parties' settlement agreement, and that Rolex incurred attorney fees in connection with its reasonably necessary efforts to obtain his compliance. In consequence, I agree with Rolex that it is entitled to award of all its attorney fees reasonably incurred on any date subsequent to January 24, 2013 (the date on which I ruled that the parties had an enforceable agreement, and on which I expressly ordered Hoffman to comply with its provisions).

### B. Fees Reasonably Incurred

Rolex seeks award of its fees in the amount either of $46,641.87, which amount is characterized as constituting all fees incurred by Rolex since November 30, 2012, or of $26,399.00, characterized as constituting all fees incurred by Rolex since January 24, 2013. In support of its petition, Rolex offers the declaration of Walter-Michael Lee that Rolex has incurred fees in those amounts since those dates. Rolex does not offer any contemporaneously maintained time records, any statement as to the reasonable hourly rate or rates of Rolex's counsel, any identification of the attorney or attorneys or other timekeepers who performed work on Rolex's behalf during the relevant time period, or any description of the tasks in connection with which the requested fees were incurred.

"The party seeking an award of fees must submit evidence supporting the hours worked and the rates claimed." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir.

2000), *citing Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Fee petitions lacking sufficient supporting materials to permit the court to make a determination of the reasonableness of the hourly rates claimed or of the tasks performed may be totally or partially denied. *See Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 892 (9th Cir. 2011); *Dry Creek Landfill, Inc. v. Waste Solutions Group, Inc.*, Case No. CV-04-3029-ST, 2007 U.S. Dist. LEXIS 16704, *14-15 (D. Or. Mar. 6, 2007).

Here, it is impossible to determine from Rolex's supporting materials which attorneys incurred the requested fees, the hourly rate charged in connection with those attorneys' services, what tasks those attorneys performed or how many hours those attorneys expended on Rolex's behalf. Rolex's failure to provide any materials supporting its fee petition with particularity renders the court's task of determining the reasonableness of Rolex's fee petition not merely difficult or problematic but impossible. In consequence, I award Rolex only a nominal fee of $100 in connection with its petition for fees pursuant to contract.

## II. Attorney Fees as Sanction for Failure to Comply with a Court Order

As noted above, this court has broad discretion to tax a party with an opponent's attorney fees as a sanction for the party's failure to comply with a court order. *See Chambers*, 501 U.S. at 45. Also as noted above, on January 24, 2013, I expressly ordered Hoffman to comply with the terms of the parties' settlement agreement, and despite multiple occasions on which the specific instances of his noncompliance were painstakingly identified to him in detail, he continued noncompliant until approximately March 11, 2013. Before that time, Hoffman participated in a teleconference with the court and with counsel for Rolex, at which he committed to correcting the deficiencies in his compliance, and later appeared in person before the court without having

Page 10 - OPINION AND ORDER

made any perceptible effort to follow through on that commitment. I agree with Rolex that Hoffman's failure to comply with this court's order of January 24, 2013, without significant court intervention warrants imposition of the attorney-fee sanction.

As noted above, Rolex offers the sworn declaration of Walter-Michael Lee that "[s]ince January 24, 2013, the date on which this Court ordered that the Settlement Agreement was binding on [Hoffman] [and expressly ordered him to comply with its provisions], Rolex has incurred attorneys' fees related to this matter in the amount of $26,399.00." Also as noted above, Rolex provides no supporting materials for the court to consider in determining whether all or some of those fees were reasonably incurred. However, when shifting fees as a sanction, also as noted above the court need not award all or only reasonably incurred fees, but rather may tailor the fee-shifting sanction according to its discretion. *See Evon*, 688 F.3d at 1035.

It is clear from the record before the court that counsel for Rolex was required to expend a significant amount of time combing through the various websites, twitter accounts, and social media accounts registered to Hoffman in order to determine the degree of his noncompliance with his obligations under the parties' settlement agreement and to identify the instances of his noncompliance with particularity, and moreover that counsel was put to this task on more than one occasion. It is further clear that, in addition to the foregoing, counsel expended considerable efforts to obtain Hoffman's compliance, including sitting by while Hoffman made the required changes one by one at laborious length in open court. I find that it is reasonable under the circumstances to sanction Hoffman with an award of attorney fees in Rolex's favor in the amount of $14,900.

## CONCLUSION

For the reasons set forth above, Rolex's motion (#61) styled as a motion for imposition of sanctions is granted, and Hoffman is ordered to pay Rolex's attorney fees and costs in the total amount of $15,000.

Dated this 29th day of May, 2013.

*Paul Papak*
Honorable Paul Papak
United States Magistrate Judge